United States District Court
For the Northern District of California

1

IN THE UNITED STATES DISTRICT COURT

2

FOR THE NORTHERN DISTRICT OF CALIFORNIA

3

| | |
|---|---|
| JOHN M. SCHOPPE-RICO, | No. C 11-2809 YGR (PR) |
| Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES; AND ADDRESSING PENDING MOTIONS** |
| v. | |
| WARDEN ROBERT A. HOREL, et al., | (Docket Nos. 33, 36, 40, 44, 48, 50, 54, 58, 61) |
| Defendants. | |

8

_____/

9

## INTRODUCTION

10

Plaintiff John M. Schoppe-Rico, a state prisoner currently incarcerated at Kern Valley State

11

Prison, filed a *pro se* civil rights action pursuant to 42 U.S.C. § 1983 alleging constitutional

12

violations stemming from his previous incarceration at Pelican Bay State Prison ("PBSP") in 2008.

13

He alleges that PBSP prison officials were deliberately indifferent to his safety and that they used

14

excessive force against him in violation of the Eighth Amendment.  In his complaint ("Compl."),

15

Plaintiff alleges that on March 14, 2008, his cellmate, inmate Littlemoon, attacked him in their cell

16

with a razor blade.  (Compl. at 5.)  Plaintiff claims that Defendants PBSP Correctional Officers S. C.

17

Jeter and C. Hamilton deliberately "staged" or set up the attack and allowed it to take place by

18

providing inmate Littlemoon with the razor blade.  (*Id.*)  Plaintiff further alleges that Defendants

19

Wardens Robert A. Horel and Francisco Jacquez, Associate Warden P. T. Smith, Facility Captain K.

20

L. McGuyer, Lieutenant J. Metcalfe, Sergeant E. C. McKellep; Control Booth Correctional Officer

21

R. L. Serna, Licensed Vocational Nurses R. Bliss and L. Roberts, as well as Correctional Officers C.

22

Hamilton, H. J. Nichols, D. K. Gobin, R. L. Serna, D. Ford, E. A. Healy, and C. J. Streeter watched

23

the attack but did not stop it or allow Plaintiff to leave his cell.  (*Id.*)  In addition, Plaintiff claims

24

that Defendants used excessive force when removing him from his cell after the attack in order to

25

take him to the infirmary.  (*Id.* at 6.)

26

Before the Court is Defendants' motion to dismiss ("MTD") Plaintiff's complaint for failure

27

to exhaust his administrative remedies, as required by 42 U.S.C. § 1997e(a).  Plaintiff has filed an

28

opposition ("Opp'n"), and Defendants have filed a reply ("Reply").  As explained below, the parties

have also filed supplemental briefing pursuant to *Woods v. Carey*, 684 F.3d 934, 935, 940-41 (9th

**United States District Court**
For the Northern District of California

Cir. 2012).  Defendants have also filed a Motion to Stay Discovery Pending Ruling on Motion to

Dismiss for Failure to Exhaust Administrative Remedies.  (Docket No. 44.)

Also before the Court are the following motions filed by Plaintiff: (1) "Request to Compel

Discovery & Protective Order [for] a[] Hearing," which will be construed as a request for an

extension of time to conduct discovery;[1] and (2) "Disqualification of Magistrate District Judge,"

which will be construed as a motion for recusal.  (Docket No. 58, 61.)  Plaintiff also filed other

miscellaneous motions, which are all currently pending before the Court.  (Docket Nos. 33, 36, 48,

50, 54.)

Having considered all of the papers filed by the parties, the Court GRANTS Defendants'

motion to dismiss, DENIES as moot Defendants' motion to stay discovery, DENIES Plaintiff's

request for an extension of time to conduct discovery, DENIES his motion for recusal, and DENIES

as moot his remaining pending miscellaneous motions.

## DISCUSSION

**I.       Request for Extension of Time to Conduct Discovery**

Plaintiff has filed a motion entitled, "Request to Compel Discovery & Protective Order [for]

a[] Hearing," in which he requests unspecified "declarations" and leave to conduct "depositions" and

"interview witnesses" about the March 14, 2008 incident.  (Docket No. 58.)

In his opposition to Defendants' motion to dismiss, Plaintiff references the aforementioned

motion to compel discovery and requests and extension of time to conduct discovery "under Federal

Rules of Civil Procedure: 56(f)."  (Opp'n at 16.)  He argues that the Court "should put off, the

ruling[] on summary judgment until Plaintiff has had sufficient time to obtain discovery under Fed.

[sic] Rules of Civil Procedure [sic] Rule 56(f)."  (*Id.*)  Federal Rule of Civil Procedure Rule 56 was

amended in 2010, and the provisions of subdivision (f) were moved to subdivision (d), without

substantial change.  *See* Fed. R. Civ. P. 56, advisory committee's notes (2010 amends) ("Subdivision

(d) carries forward without substantial change the provisions of former subdivision (f).").  Plaintiff

also cites to *Harris v. Pate*, 440 F.2d 315, 318 (7th Cir. 1971), a case from the Seventh Circuit Court

---

[1] In Plaintiff's opposition, he requests an extension of time to conduct discovery pursuant to Federal Rule of Civil Procedure 56(f), and mentions his above-referenced motion to compel discovery.  (Opp'n at 16.)

of Appeals, holding that when a party moves to dismiss a case for failure to state a claim, such a motion can be treated as a motion for summary judgment. (Opp'n at 16.)  However, in the present case, Defendants did not file a motion for summary judgment.  Nor did they file a motion to dismiss for failure to state a claim.  Instead, as mentioned above, Defendants have filed a motion to dismiss for failure to exhaust administrative remedies.  Therefore, Plaintiff's reliance on Rule 56(d) is misplaced and without merit.

Additionally, the Court notes that Plaintiff has already filed his opposition to the pending motion to dismiss as well as a supplemental opposition.  Meanwhile, Defendants have filed their reply and a supplemental reply.  Plaintiff fails to give valid reasons to delay the Court's ruling on the fully submitted motion to dismiss.  First, whether Plaintiff conducts depositions or interviews witnesses about the March 14, 2008 incident has no bearing on the pending motion to dismiss, which deals with the exhaustion of administrative remedies.  Second, Plaintiff fails to elaborate on how conducting further discovery is necessary to oppose the motion to dismiss.

Accordingly, the Plaintiff's request for an extension of time to compel discovery is DENIED.

## II.  **Motion to Dismiss**

### A.  **Legal Standard**

The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (1996) ("PLRA"), amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  The exhaustion requirement applies equally to prisoners held in private or government facilities. *See Roles v. Maddox*, 439 F.3d 1016, 1017-18 (9th Cir. 2006). Exhaustion is not always required, however.  If the court determines that a claim is, "on its face," frivolous, malicious, fails to state a claim, or seeks monetary relief from a defendant who is immune from such relief, the claim may be dismissed without first requiring exhaustion.  *See* 42 U.S.C. § 1997e(c)(2).  The exhaustion requirement only applies to cases filed after the PLRA's passage on April 26, 1996.  *See Bennett v. King*, 293 F.3d 1096, 1097-98 (9th Cir. 2002) (exhaustion requirement applied to case refiled after PLRA enacted)**.**

Exhaustion is mandatory and no longer left to the discretion of the district court. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)). "Prisoners must now exhaust all 'available' remedies, not just those that meet federal standards." *Id.* Even when the relief sought cannot be granted by the administrative process, i.e., monetary damages, a prisoner must still exhaust administrative remedies. *Id.* at 85-86 (citing *Booth*, 532 U.S. at 734). The mandatory exhaustion of available administrative remedies is not limited to suits under Section 1983, but to any suit challenging prison conditions. *Id.* at 85 (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)).

The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Woodford*, 548 U.S. at 84. "The text of 42 U.S.C. § 1997e(a) strongly suggests that the PLRA uses the term 'exhausted' to mean what the term means in administrative law, where exhaustion means proper exhaustion." *Id.* at 92. Therefore, the PLRA exhaustion requirement requires proper exhaustion. *Id.* "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91 (footnote omitted).

Where a prison's grievance procedures do not specify the requisite level of factual specificity required in the grievance, "'a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.'" *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (quoting *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)). The grievance need not include legal terminology or legal theories unless they are needed to provide notice of the harm being grieved. *Id.* Nor must a grievance include every fact necessary to prove each element of an eventual legal claim. *Id.* The purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation. *Id.* The grievance should include sufficient information "to allow prison officials to take appropriate responsive measures." *Id.* (citation and internal quotation omitted).

The California Department of Corrections and Rehabilitation ("CDCR") provides its inmates and parolees the right to appeal administratively "any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare." Cal. Code Regs.

United States District Court
For the Northern District of California

tit. 15, § 3084.1(a).  It also provides its inmates the right to file administrative appeals alleging

misconduct by correctional officers.  *See id*. § 3084.1(e).  In order to exhaust available

administrative remedies within this system, a prisoner must submit his complaint on a CDCR Form

602 ("602 inmate appeal" or "appeal") and proceed through several levels of appeal: (1) informal

level grievance filed directly with any correctional staff member, (2) first formal level appeal filed

with one of the institution's appeal coordinators, (3) second formal level appeal filed with the

institution head or designee, and (4) third formal level appeal filed with the CDCR director or

designee.  *Id*. § 3084.5; *Brodheim v. Cry*, 584 F.3d 1262, 1264-65 (9th Cir. 2009); *Barry v. Ratelle*,

985 F. Supp. 1235, 1237 (S.D. Cal. 1997).  This satisfies the administrative remedies exhaustion

requirement under § 1997e(a).  *Barry*, 985 F. Supp. at 1237-38.

Nonexhaustion under § 1997e(a) is an affirmative defense.  *Jones v. Bock*, 549 U.S. 199,

217-18 (2007); *Wyatt v. Terhune,* 315 F.3d 1108, 1119 (9th Cir. 2003).  Defendants have the burden

of raising and proving the absence of exhaustion, and inmates are not required to specifically plead

or demonstrate exhaustion in their complaints.  *Jones*, 549 U.S. at 215-17.  As there can be no

absence of exhaustion unless some relief remains available, a movant claiming lack of exhaustion

must demonstrate that pertinent relief remained available, whether at unexhausted levels or through

awaiting the results of the relief already granted as a result of that process.  *Brown v. Valoff*, 422

F.3d 926, 936-37 (9th Cir. 2005).

### B.   <u>Factual Background</u>

In March of 2008, Plaintiff was housed in the Administrative Segregation Unit ("Ad-Seg") at

PBSP.[2]  (Compl. at 4.)  During this time period, Plaintiff alleges that he was repeatedly harassed by

Defendants and that the worst of the harassment took place on March 14, 2008.  (*Id*.)

On March 14, 2008, Plaintiff suffered serious injuries as a result of an altercation with his

cellmate, inmate Littlemoon.  (*Id*. at 5.)  Plaintiff claims that Defendants Jeter and Hamilton

handcuffed him.  (*Id*.)  He claims that they then "escorted inmate Littlemoon to Plaintiff's cell armed

---

[2] The record shows that Plaintiff was placed in Ad-Seg "on suspicion of being involved in a Riot on PBSP Facility B General Population Yard."  (Declaration of T. Puget, Docket No. 41 ("Puget Decl."), Ex. E)  The riot involved Northern and Southern Hispanics, and Plaintiff was charged with "Participation in a Riot."  (*Id*.)

with a razor provided to [Littlemoon]." (*Id*.)  Inmate Littlemoon then attacked Plaintiff with the razor blade.  (*Id*.)  Plaintiff alleges that Defendants Jeter and Hamilton not only armed inmate Littlemoon, but also allowed the attack to occur without coming to Plaintiff's aid.  (*Id*.)

Plaintiff further alleges that while the attack was taking place, the remaining Defendants "laughed loudly and yelled obscenities, insults and mocking jokes at [him]." (*Id*.)  Plaintiff claims Defendants reached under the cell door and pepper-sprayed him, but not his attacker, thus allowing inmate Littlemoon to continue with the attack.  (*Id*.)  Additionally, Plaintiff alleges that these Defendants "jabbed at [him] with their baton sticks [] through the food port" in the cell door and that they were "assisting the attacker further in his assaults." (*Id*.)

Plaintiff contends that Defendants only opened the cell door "after long periods of time elapsed." (*Id*. at 6.)  Plaintiff claims that they "grabbed him by the arm, and hair, dragged him out from . . . the cell." (*Id*.)  Plaintiff alleges that Defendants also grabbed him by the neck "choking him" while they removed him from his cell.  (*Id*.)  He contends that Defendants also struck him and subjected him to insults and racial slurs.  (*Id*.)  As a result of the incident, Plaintiff was badly injured and suffered from cuts on his back, face, head, arm, and cornea as well as swelling on his face.  (*Id*.)  Plaintiff alleges that Defendant McKellep photographed his injuries, and that Defendant Bliss, a nurse, stole his watch before taking him to the prison infirmary.  (*Id*.)  Plaintiff was allowed to shower, and he was then treated for his injuries.  (*Id*. at 7.)  Plaintiff was then sent to an outside infirmary for eye surgery.  (*Id*.)  He claims that while he was at the outside infirmary, inmate Littlemoon stole some of his property.  (*Id*.)

C.     **Procedural Background**

On June 8, 2011, Plaintiff filed this *pro se* civil rights action under 42 U.S.C. § 1983 alleging: (1) deliberate indifference to safety; (2) use of excessive force; and (3) a claim against Defendant Bliss for stealing his watch.  (Docket No. 1.)  Other Defendants named in the complaint were Defendants Governor Schwarzenegger, PBSP Sergeant J. R. Anderson, and PBSP Correctional Officer Ramirez, as well as Defendants Horel, Jacquez, Smith, McGuyer, Metcalfe, McKellep, Serna, Roberts, Jeter, Hamilton, Nichols, Gobin, Ford, Healy, and Streeter.  (*Id*.)  Plaintiff seeks monetary damages.

In its Order of Service dated September 2, 2011, the Court found cognizable claims of

United States District Court
For the Northern District of California

1  deliberate indifference to safety and use of excessive force in violation of Plaintiff's Eighth

2  Amendment rights against Defendants Horel, Jacquez, Smith, McGuyer, Metcalfe, McKellep, Serna,

3  Bliss, Roberts, Jeter, Hamilton, Nichols, Gobin, Ford, Healy, and Streeter. (Docket No. 6.)  In the

4  same Order, the Court dismissed Plaintiff's claim against Defendant Bliss for stealing his watch

5  noting that negligent and intentional deprivation of property do not constitute due process claims

6  under Section 1983 where the deprivation was "random and unauthorized." (Sept. 2, 2011 Order at

7  3.)  The Court further dismissed the claims against Defendants Schwarzenegger, Anderson, and

8  Ramirez because Plaintiff had failed to raise any allegations against these Defendants.  Finally, the

9  Court directed the United States Marshal ("Marshal") to serve the aforementioned Defendants at

10  PBSP, where Plaintiff indicated they were located.  The Marshal successfully served these

11  Defendants, but returned the summons unexecuted as to Defendants Ford and McKellep. (Docket

12  Nos. 8, 23.)

13         The Marshal informed the Court that Defendant Ford's summons was returned unexecuted

14  because "PBSP state[d] they ha[d] several employees with this name." (Docket No. 8.)  Meanwhile,

15  the unexecuted summons included a notation by the Marshal that Defendant McKellep was not

16  employed at the following prisons: PBSP, the California Correctional Institution, or the Richard J.

17  Donovan Correctional Facility. (Docket No. 23.)

18         In an Order dated January 26, 2012, the Court notified Plaintiff that the Marshal had been

19  unable to effectuate service upon Defendant McKellep, and directed Plaintiff to provide the current

20  address for that Defendant within thirty days. (Docket No. 27.)  The Court also informed Plaintiff

21  that the failure to provide Defendant McKellep's current address could result in the dismissal of all

22  claims against this Defendant.  Thereafter, Plaintiff filed a motion for an extension of time to assist

23  the Court in serving Defendant McKellep. (Docket No. 37.)  In an Order dated March 20, 2012, the

24  Court granted Plaintiff's motion for extension of time and set a new deadline of April 9, 2012.

25  (Docket No. 49.)  On April 6, 2012 and April 25, 2012, Plaintiff filed two other motions for an

26  extension of time to assist the Court in serving Defendant McKellep. (Docket Nos. 50, 54.)  These

27  motions are still pending.  The Court did not issue any orders relating to the Marshal's inability to

28  effectuate service on Defendant Ford.

           To date, Defendants Ford and McKellep have not been served in this action.

**United States District Court**
For the Northern District of California

On February 29, 2012, the remaining Defendants filed their motion to dismiss.  (Docket No. 40.)  In their motion to dismiss, Defendants argue that the Court may not proceed to decide the merits of Plaintiff's deliberate indifference to safety and use of excessive force claims because he did not properly exhaust all available administrative remedies prior to filing the present action.  (MTD at 2.)  Defendants allege that although Plaintiff filed around forty 602 inmate appeals between March 14, 2008 and June 8, 2011, only six of these appeals referenced the March 14, 2008 incident.  (*Id*. at 8.)  Defendants argue that Plaintiff failed to assert his deliberate indifference to safety and excessive force claims in these six appeals with the requisite level of factual specificity.  (*Id*. at 9.)  Additionally, they argue that where he did assert his claims with adequate specificity, Plaintiff failed to raise these claims at each level of administrative review -- and up to the highest level -- in order to properly exhaust them.  (*Id*.)

In his opposition, Plaintiff argues that he "has exhausted his administrative remedies, under the Prison Litigation Reform Act of 1995."  (Opp'n at 3.)  He further argues that "between March 14, 2008 and June 8, 2011, [he] submitted a total of forty inmate appeals at Pelican Bay and everyone of them mentioned the incident."  (*Id*. at 7.)  Plaintiff contends that Defendants mention only a handful of these appeals in their motion to dismiss and neglect to mention the remaining appeals which in fact do satisfy the exhaustion requirement under § 1997e(a).  (*Id*. at 15.)  Additionally, he claims that Defendants withheld some relevant appeals from the Court.  (*Id*.)

Since the time Defendants' present dispositive motion has been submitted, a recent decision from the Ninth Circuit Court of Appeals was issued that now requires *pro se* prisoner-plaintiffs to be given "notice of what is required of them in order to oppose" dismissal of the action or certain claims for failure to exhaust administrative remedies before filing suit.  *Woods*, 684 F.3d at 935, 940-41.  In an Order dated July 23, 2012, the Court, pursuant to *Woods* and in accordance with the holding of *Wyatt v. Terhune*, 315 F.3d 1108, 1120 n.14 (9th Cir. 2003), explained to Plaintiff what he must do in order to oppose dismissal.  (Docket No. 66.)  The Court then set a new briefing schedule, which directed Plaintiff to file a supplemental opposition, and Defendants to file a supplemental reply.

On September 10, 2012, Plaintiff filed his supplemental opposition ("Supp. Opp'n").  (Docket No. 73.)  In his supplemental opposition, Plaintiff again argues that he mentioned the March

14, 2008 incident in all of his grievances and that, as such, he has exhausted his administrative

remedies.  (Supp. Opp'n at 23.)  Additionally, Plaintiff argues that he filed multiple grievances that

never made it through the administrative appeals process as a result of Defendants' conduct.  (*Id*. at

28.)  On September 13, 2012, Defendants filed their supplemental reply ("Supp. Reply").

Defendants reiterate their argument that Plaintiff's contention that his forty grievances exhausted his

claims is not supported by the record.  (Supp. Reply at 2.)  Defendants find unavailing Plaintiff's

argument that there are missing grievances that exhausted his claims because he fails to point to a

specific grievance and, instead, relies on conclusory allegations.  (*Id*. at 3.)

      **D.**     **<u>Administrative Appeals</u>**

        The Court now considers whether Defendants' evidence is adequate to establish that Plaintiff

failed to exhaust his administrative remedies with respect to the present claims.  In support of their

motion to dismiss, Defendants provide the declaration of T. Puget, the Correctional Counselor and

Appeals Coordinator at PBSP.  Appeals Coordinator Puget reviewed the portion of Plaintiff's prison

central file ("C-file") containing his inmate appeals and appeal responses from March 14, 2008 to

June 8, 2011.  Appeals Coordinator Puget states in his declaration that he found the following:

> Between March 14, 2008 and June 8, 2011, the date when he filed this lawsuit, Mr.
> Schoppe-Rico filed forty 602 appeals at Pelican Bay.  Fifteen appeals either were
> screened out for failure to comply with the rules and regulations or were addressed
> at the informal level only.  Six of the remaining twenty-five appeals mention a
> March 14, 2008 incident . . . .

(Declaration of T. Puget, Docket No. 41 ("Puget Decl.") ¶ 7.)  The Court's review of the appeals

referenced by the declaration shows Appeals Coordinator Puget's depiction to be accurate.  Although

Plaintiff filed numerous appeals following the March 14, 2008 incident, only six grievances make a

reference to the March 14, 2008 incident.  Therefore, the Court considers only these six appeals,

identified by inmate appeal form number below, to determine whether Plaintiff has met the

exhaustion requirement under § 1997e(a).

      **1.**     **<u>602 Inmate Appeal Nos. S-08-01533 and S-08-01879</u>**

        On June 3, 2008, Plaintiff filed Appeal No. S-08-01533 asserting that he should be

compensated for the loss of his property.  (Puget Decl., Ex. C.)  Specifically, in Section B of his

appeal, where inmates are asked to state what action they are requesting, Plaintiff stated:

> Upon viewing receipts that state in plain language the department shall accept

> liability under these circumstances of loss items/property by staff listed in page one receipt of the $10.79 of hygien [sic] an $79.98 loss in law books and in receipt page two $27.00 of loss canteen receiven [sic] on 3-14-08, that's missing.  The staff or departments shall pay for loss [sic] property and reimburse me for each item value listed or replace items from the Victim Compensation & Government Claim Board regarding . . . reimbursement to be made to my account accordingly to Title 15, Sec. 3193 & plus my shoes, sweats, topshirts & etc.

(*Id*.)  Plaintiff also submitted a one-page addendum to this appeal form.  (*Id*.)  In this addendum, he made two references to the March 14, 2008 incident.  On the first page of the addendum, Plaintiff wrote: "Some one sergeant, Lit., captain etc. then decided to put inmate Littlemoon back in my cell after he attempted to murder me."  (*Id*.)  This statement was made in conjunction with Plaintiff's description of his stolen property.  On the second page of the hand-written addendum, Plaintiff made a second reference to the March 14, 2008 incident: "Plus C/O Jeter should of [sic] sprayed the inmate when attacked enstead [sic] he watch & pulled me out after the inmate was done assaulting me."  (*Id*.)  Plaintiff's appeal was bypassed at the informal level of review and at the first level of review.  (*Id*.)

Subsequently, Plaintiff filed an appeal at the second level of review.  In his appeal, he raised the following claims:

> Your staff mixed my property & cellies up.  They never inventoried it.  Your staff los[t] & stole my law books in retaliation, to prevent me from filing lawsuits or reaching my court deadlines so my case will be dismissed . . . 1) Srgt. Anderson didn't investigate nothing lie'ing [sic] & just covering up their staff mess & inmate Littlemoon had no business to be put back in my cell to steel [sic] & loot my property . . . Littlemoon stold [sic] mines and everything I own & had in my cell.  I want full compensation for all items herein submitted period & full recovery be given of all my property cards & inventory sheet of mines & Littlemoon in full investigation.

(*Id*.)

While Appeal No. S-08-01533 was pending, Plaintiff filed a second appeal -- Appeal No. S-08-01879.  (Puget Decl., Ex. D.)  In this second appeal, Plaintiff alleged that correctional officers unlawfully restricted his access to the law library.  (*Id*.)  His appeal was denied at both the informal level and the first level of review.  (*Id*.)  Plaintiff appealed the first level denial and, at the second level of review, asserted substantially the same claims he that he had asserted in the first level of Appeal No. S-08-01533.  (*Id*.)  The second level reviewer combined Appeal No. S-08-01879 with his previous appeal, Appeal No. S-08-01533, and subsequently denied Plaintiff's claims as to property reimbursement and partially granted his claim of lack of law library access.  (*Id*.)

**United States District Court**
For the Northern District of California

1    Plaintiff appealed the denial to the Director's level of review.  (*Id.*)  At the Director's level,

2    Plaintiff focused on his lack of law library access claim, arguing that the library staff's behavior had

3    been designed to ensure that he missed his court deadlines.  (*Id.*)  At the very bottom of his

4    Director's level appeal, Plaintiff referenced his previous appeal, Appeal No. S-08-01533, and stated

5    that the previous appeal had not been resolved and that "a citizen complaint will be filed if [he was

6    not] re-compensated for loss of property and injuries."  (*Id.*)  The Director's level reviewer rejected

7    Plaintiff's reimbursement claim and did not address the reference to Appeal No. S-08-01533.  (*Id.*)

8                    **2.    602 Inmate Appeal No. S-08-02206**

9    On August 8, 2008, Plaintiff submitted Appeal No. S-08-02206.  In Part A of this appeal,

10   Plaintiff stated that he appeared before PBSP's Institution Classification Committee ("ICC") on June

11   25, 2008 and was "unhappy" because the ICC recommended him for transfer to PBSP's Security

12   Housing Unit ("SHU") to serve an Indeterminate SHU term.  (Puget Decl., Ex. E.)  He claimed that

13   he was no longer an active gang member and was in the process of debriefing.[3]  (*Id.*)  He added that

14   he was "no longer accepted in general population, SHU or Ad-Seg without a threat to his safety and

15   security."  (*Id.*)  He requested that his indeterminate SHU term be suspended, that he be sent to the

16   Transitional Housing Unit ("THU"), that his mainline status be reinstated, and that the ICC review

17   their erroneous decision and comply with his requests.  (*Id.*)  Additionally, Plaintiff requested

18   compensation "for injuries sustained, stolen property and mishousement [sic]" and "proper medical

19   care" for injuries."  (*Id.*)

20   Additionally, Plaintiff attached a one-page addendum to the appeal requesting a housing

21   transfer.  (*Id.*)  In the addendum, Plaintiff alleged that he was improperly housed in the SHU and that

22   he should be housed in the TSU because "his name has been placed on a . . . Bad New List and all

23   Northerns in G.P. [general population] [] were given instructions to do harm to Petitioner . . . ."  (*Id.*)

24   At the beginning of the addendum, Plaintiff makes a general reference to an "attempted assassination

25   on [his] life," without stating a date or naming any perpetrators.  Towards the end of the addendum,

26   Plaintiff requested "incident reports of the 3-14-08 incident . . . ."  (*Id.*)  He also added more details

27

28
_____

[3] Debriefing is the process by which an investigator determines whether an inmate/parolee has dropped out of a gang.

about the March 14, 2008 incident, stating:

> . . . [A]fter inmate Littlemoon who attempted to murder petition[er] stold [sic] approx $189.00 in property from the cell, and ruined a brand new pair of shoes of mine and a watch all which I should be compensated for by Littlemoon or the department all receipts are in another 602 and on property card.  Secondly Littlemoon being a Native American should never of [sic] been housed with Petitioner and staff housed him in my cell due to the new BMU program.  Also then re-housed Petitioner and Littlemoon in the mental health ad-seg, with non-mental health inmates from mainline, who herd [sic] Petitioner was on CCMS before in 2004 and consider him a snitch and order Littlemoon to try to kill him.  Petitioner now wishes to be compensated for the attempt on his life . . . [undecipherable] . . . and to be sent to (THU).

(*Id.*)

The first level reviewer denied Plaintiff's appeal and only addressed his housing claim by denying his requests for THU placement, for his indeterminate SHU term to be suspended, and for his mainline status to be reinstated.  (*Id.*)  The reviewer added that the "compensation for injuries [was] out of the scope of the appeals process," and directed Plaintiff to file a "medical appeal" if he "still [had] medical issues."  (*Id.*)  The first level reviewer did not specifically  address the addendum or make any references to the March 14, 2008 incident.  (*Id.*)

In his appeal to the second level of review, Plaintiff renewed his aforementioned housing claims, as well as his requests for compensation for injuries sustained, stolen property and proper medical care for injuries.  (*Id.*)  Plaintiff made no reference to the March 14, 2008 incident at the second level of review.  (*Id.*)  Nor did he re-attach or refer to the aforementioned one-page addendum.  (*Id.*)  The second level reviewer partially granted Plaintiff's appeal as to his request for proper medical care by directing Plaintiff to "fill out a sick call slip so his medical issues can be addressed."  (*Id.*)  The reviewer denied all Plaintiff's remaining requests.  (*Id.*)  The reviewer included a reference to the March 14, 2008 incident in his decision and explained that Plaintiff "was a victim of an in cell Attempted Murder, which was perpetrated by his cellmate, inmate Littlemoon." (*Id.*)  The reviewer also stated that an investigation into the attempted murder "indicated that [Plaintiff] would not be a good candidate for Sensitive Needs Yard (SNY) placement based, party, on the inmate's unwillingness to cooperate with investigators, as he adamantly denied having any safety concerns."  (*Id.*)

At the Director's level of review, Plaintiff asserted that his claims were "the same as above in (F-Section)," referencing his claims in his appeal to the second level of review.  (*Id.*)  Additionally,

Plaintiff indicated in his Director's level appeal that "incompatible activity [was] being displayed by staff, who need to be investigated for corruption," and that "citizen's complaints will be filed." (*Id.*) Again, Plaintiff made no reference to the March 14, 2008 incident at the Director's level of review. (*Id.*)  The Director's level reviewer noted in his decision that at Plaintiff's appearance before the ICC on September 10, 2008, Plaintiff stated that he did in fact have safety concerns. (*Id.*)  However, the Director's level reviewer considered the issues in Plaintiff's appeal and reaffirmed the institution's examination and conclusions as addressed within the second level of review. (*Id.*)  Thus, similar to the second review decision, Plaintiff's appeal was partially granted as to the medical claim and denied as to all remaining claims at the Director's level of review. (*Id.*)

### 3.    602 Inmate Appeal No. S-08-03145

On November 4, 2008, Plaintiff submitted Appeal No. S-08-03145.  In this appeal, Plaintiff alleged that: "On March 14, 2008 at approx 17:55 hours, one of the responding officers or licensed nurses Bliss R., or Simmons snatched my Casio watch off my wrist an[d] kept it for no-reason." (Puget Decl., Ex. F.)  Plaintiff further alleged that the correctional staff harassed him regularly. (*Id.*) However, he made no further reference to any other events that took place on March 14, 2008. (*Id.*) In the section of the appeal form where inmates indicate the relief they are requesting, Plaintiff requested that correctional staff be instructed not to harass him and that he be transferred to the THU. (*Id.*)  This appeal was bypassed at the informal and first levels of review. (*Id.*)

At the second level of review, Plaintiff again raised the issue of his stolen property. (*Id.*) Specifically, he alleged that: "The issue of my stolen watch by nursing staff Bliss, has n[o]t been resolved." (*Id.*)  Plaintiff made no further reference to the March 14, 2008 incident at the second level of review. (*Id.*)  Plaintiff's appeal was partially granted at the second level of review with respect to his property claims. (*Id.*)  Plaintiff did not pursue this appeal to the Director's level of review. (*Id.*)

### 4.    602 Inmate Appeal No. S-10-00384

On February 2, 2010, Plaintiff submitted Appeal No. S-10-00384. (Puget Decl., Ex. G.)  In this appeal, he alleged that he had been subject to harassment by correctional staff. (*Id.*) Specifically, Plaintiff contended that Correctional Officer Ramirez, who is not a named Defendant in this action, had made repeated threats to him. (*Id.*)  Additionally, Plaintiff urged that correctional

staff needed to be held liable for stealing his property on March 14, 2008, but he made no further

reference to any other events that took place on that date.  (*Id*.)  Plaintiff requested reimbursement

for his property and also that he receive monetary damages for the "cruel and unusual punishment"

that he had been subject to.  (*Id*.)  Plaintiff's appeal was bypassed at the informal and first levels of

review.  (*Id*.)

At the second level of review, Plaintiff reasserted his claim of harassment by correctional

staff:

> There[']s a series of unresolved issues, that a citizen[] complaint was filed on, that was
> not inquired on, for one its not the appeals being reissued, but all the staff misconduct
> in them, being complain[ed] about, also the appelates [sic] reviewers misconduct
> regarding resolving the issue contrary to the misconduct in them and its all these staff
> part of a[] conspiracy & cover up of illegal dealing & misconduct, that's threaten &
> endangering my life & safety & security, not only is C/O Ramirez holding repraisals
> [sic] but all other named staff in these documents who done inflicted injurys [sic]
> someway or by allowing inmates too & I still suffer from these threats and issues.

(Puget Decl., Ex. G.)  The second level reviewer partially granted Plaintiff's appeal with respect to

the harassment allegations and conducted an investigation of those allegations.  (*Id*.)  Plaintiff then

appealed the second level reviewer's decision to the Director's level of review.  (*Id*.)  At this level,

Plaintiff again raised the issue of his stolen property stating: "Government claim board already

ordered reimbursement for this property stolen that owed.  The officer herein lost $178.78 dollars in

property on March 14, 2008."  (*Id*.)  Again, Plaintiff made a request for compensation for his stolen

property.  (*Id*.)

Plaintiff also submitted a handwritten document in the form of an amended complaint under

Section 1983 dated May 31, 2009 as a part of his Director's level appeal.  (*Id*.)  In this amended

complaint, Plaintiff makes various allegations against correctional staff, including that he was

improperly housed and that he did not receive proper medical care.  (*Id*.)  On the fifth page of the

amended complaint, Plaintiff references the March 14, 2008 incident and alleges that correctional

staff allowed the attack by inmate Littlemoon: "Staff provoked . . . the attempted murder on Plaintiff

on March 14, 2008 Plaintiff resulting in serious bodily injuries."  (*Id*.)  He further alleges on page six

of this document that the correctional staff used force when removing him from his cell.  (*Id*.)

Plaintiff makes additional allegations about his stolen property in the amended complaint.  (*Id*.)

14

Plaintiff was denied relief at the Director's level of review, and the Director's level reviewer declined to consider the allegations contained in the amended complaint because Plaintiff raised new claims that were not raised at the initial levels of review.  (*Id.*)

### 5.   602 Inmate Appeal No. S-10-03467

On October 27, 2010, Plaintiff submitted Appeal No. S-10-03467.  (Puget Decl., Ex. H.)  In this appeal, Plaintiff alleged that Correctional Officers Ramirez and Rutledge (both not named as Defendants in this action) harassed and threatened him.  (*Id.*)  Plaintiff also includes this statement, which the Court could construe as a potential reference to the March 14, 2008 incident:  "My 42 U.S.C. § 1983 filed on one of those same staff on A-one 3rd watch made her personal own vendetta to harrass and threaten me for her actions . . . she took on 3-14-2010."  (*Id.*)  Plaintiff further alleged that his claims were not being investigated and that an attempt was being made to cover up staff misconduct.  (*Id.*)  Plaintiff's appeal was bypassed at the informal and first levels of review. Plaintiff's second level appeal was partially granted, and the reviewer conducted an investigation of his staff misconduct claim.  (*Id.*)  Upon investigation, the reviewer found that there had been no staff misconduct.  (*Id.*)

At the Director's level of review, Plaintiff raised substantially the same vague claim of harassment against Correctional Officers Ramirez and Rutledge that was raised in his appeals at the lower levels of review.  (*Id.*)  Plaintiff's appeal was denied at the Director's level.  (*Id.*)

### E.   Analysis

Here, Plaintiff alleges that on March 14, 2008, Defendants were deliberately indifferent to his safety when they allowed inmate Littlemoon to attack him with a razor blade and that they used excessive force when removing Plaintiff from his cell after the attack in order to take him to the infirmary.  (Compl. at 1.)  Defendants argue in their motion to dismiss that Plaintiff did not properly exhaust his administrative remedies prior to the filing of his complaint as mandated by § 1997e(a). (MTD at 9.)  Defendants acknowledge that Plaintiff submitted some forty appeals between March 14, 2008 and June 8, 2011.  (*Id.* at 8.)  They further acknowledge that six of the forty appeals referenced or focused on the March 14, 2008 incident that is the basis of Plaintiff's excessive force

and deliberate indifference to safety claims in the present action.  (*Id.*)  However, they contend that

these six appeals did not exhaust Plaintiff's claims.  (*Id.* at 9.)

Specifically, Defendants argue that in the six grievances where Plaintiff references the March

14, 2008 incident, Plaintiff does not allege that correctional staff "provided his cellmate with a razor

blade to facilitate the attempted murder, participated in the attack by spraying him rather than his

cellmate with pepper spray, or dragged him out of the cell and through the prison by his hair, arm,

and neck while yelling at him and hitting him on the head."  (*Id*. at 8-9.)  They point out that, in his

grievances, Plaintiff "repeatedly requested reimbursement for the property he claims his cellmate

stole from him after the attack."  (*Id.* at 9.)  They argue that even where Plaintiff did reference the

March 14, 2008 incident, he either failed to do so with sufficient specificity to alert the prison as to

the nature of his claims or failed to raise the issue at every level of the administrative appeals

process.  (*Id*. at 15.)

In his opposition to the motion to dismiss, Plaintiff contends that his administrative

grievances satisfied the exhaustion requirement because he specifically complained about the March

14, 2008 incident in *all* of the grievances that he filed and not just the six grievances that Defendants

address in their motion to dismiss.  (Opp'n at 7.)  Additionally, in his supplemental opposition,

Plaintiff alleges that he filed numerous grievances regarding the March 14, 2008 incident which

never made it through the administrative appeals process as a result of Defendants' misconduct:

> Plaintiff['s] several other appeals shows otherwise Plaintiff satisfy and exhaust his
> [claims] under the "PLRA" . . . were not an adequate functioning grievance system.
> But one rigid and tainted w[h]ere exhaustion was futile.  In other instance, staff failed
> to deliver grievances and provide hearing going as far to destroy them.

(Supp. Opp'n at 28.)  The Court finds each of Plaintiff's aforementioned arguments meritless, as

follows.

### 1.    Prevented From Filing Grievances

Although Plaintiff alleges that Defendants prevented him from properly filing numerous

grievances, he fails to point to a specific appeal that he was unable to file as a result of Defendants'

misconduct.  (*Id*.)  Instead, in his supplemental opposition, Plaintiff makes the conclusory allegation

that many of his appeals were destroyed or never made it through the administrative appeals process.

(*Id.*)  While Plaintiff is not required to allege that he resorted to extraordinary measures in order to exhaust his administrative remedies, conclusory allegations that the administrative remedies process is inadequate are insufficient to defeat dismissal for failure to exhaust.  *See White v. McGinnis,* 131 F.3d 593, 595 (6th Cir. 1997).  Furthermore, the fact that Plaintiff was able to file forty grievances between March 14, 2008 and June 8, 2011, some of which mention the March 14, 2008 incident, suggests that Plaintiff had adequate access to the administrative appeals process.  (Puget Decl. ¶ 7.)

### 2.    Referenced March 14, 2008 Incident in Every Appeal

Plaintiff's claim that he referenced the March 14, 2008 incident in every appeal that he filed is simply not supported by the record.  As previously discussed, Plaintiff submitted some forty appeals between March 14, 2008 and June 8, 2011.  (Puget Decl. ¶ 7.)  Fifteen of these appeals were screened out for failure to comply with rules and regulations or were only addressed at the informal level.  (*Id.*)  Pursuant to *Woodford*, these improperly filed appeals, which did not go through each level of administrative review, do not satisfy the exhaustion requirement.  548 U.S. at 88.  Additionally, nineteen of the other appeals that Plaintiff filed do not mention a March 14, 2008 incident.  (Puget Decl., Exs. B, I-Z.)  Furthermore, these nineteen appeals make no reference to the issues of excessive use of force or deliberate indifference to safety in violation of the Eighth Amendment.  (*Id.*)  Therefore, these nineteen appeals, too, fail to satisfy the exhaustion requirement under § 1997e(a).

### 3.    Referenced March 14, 2008 Incident in Six Remaining Appeals

#### a.    602 Inmate Appeal Nos. S-08-03145 and S-10-03467

In two of the six remaining administrative appeals which reference the March 14, 2008 incident (Appeal Nos. S-08-03145 and S-10-03467), Plaintiff failed to make allegations with sufficient specificity to alert prison officials as to the nature of his claims.  *See Griffin*, 557 F.3d at 1120 (grievance should include sufficient information "to allow prison officials to take appropriate responsive measures").  In Appeal No. S-08-3145, Plaintiff stated that on March 14, 2008, Defendant Bliss "snatched" his wristwatch off of his wrist.  (Puget Decl., Ex. F.)  Plaintiff made no further

17

reference to the March 14, 2008 incident while pursuing this appeal.  (*Id.*)  While this statement alerts prison officials as to the March 14, 2008 date, the statement is insufficient to alert them as to Plaintiff's claims of deliberate indifference to safety or use of excessive force.  In addition, Plaintiff did not appeal his claims in Appeal No. S-08-03145 to the highest level of review.  As mentioned above, compliance with the prison grievance procedures is required by the PLRA for Plaintiff to properly exhaust.  *Woodford*, 548 U.S. at 90-91.  Because Plaintiff did not receive a final decision from the Director's level of review of Appeal No. S-08-03145, he failed to satisfy the exhaustion requirement under § 1997e(a).  *Barry*, 985 F. Supp. at 1237-38.

In Appeal No. S-10-03467, Plaintiff alleged that Correctional Officers Ramirez and Rutledge, who are not named Defendants in this action, verbally harassed him.  (Puget Decl., Ex H.)  The Court notes that Plaintiff made a reference to an incident on March 14, 20*10*, as opposed to March 14, 20*08*.  However, even if Plaintiff actually meant to refer to the March 14, 2008 incident, Plaintiff provides no additional details beyond this vague reference.  His statements are insufficient to alert prison officials to his claims of deliberate indifference to safety and use of excessive force.  At the Director's level of review of Appeal No. S-10-03467, Plaintiff failed to make any specific reference to the March 14, 2008 incident and, instead, he raised the same vague claim of harassment against Correctional Officers Ramirez and Rutledge that he raised at the lower levels of review.  (*Id.*)  Therefore, assuming that Plaintiff meant to reference the March 14, 2008 incident in both Appeal Nos. S-08-03145 and S-10-03467, these appeals fall short of the level of specificity needed to satisfy the exhaustion requirement.  *See Griffin*, 557 F.3d at 1120 (no exhaustion where grievance complaining of upper bunk assignment failed to allege, as the complaint had, that nurse had ordered lower bunk but officials disregarded that order).

### b.   602 Inmate Appeal Nos. S-08-01533, S-08-01879, S-08-02206, and S-10-00384

In the remaining four administrative appeals in which he did reference the March 14, 2008 incident with specificity, Plaintiff failed to exhaust his claims because he did not reference the incident at each level of administrative review.  *See Brodheim*, 584 F.3d at 1264-65 (holding that, in California, prisoner must file his 602 inmate appeal at each level of administrative review in order to

1    properly exhaust). In Appeal Nos. S-08-01533 and S-08-01879, which were ultimately combined by

2    prison officials because they raised substantially the same claims, Plaintiff made an explicit

3    reference to the March 14, 2008 incident at the first level of review. (Puget Decl., Ex D.) However,

4    at the second level of review, he focused his appeal solely on the issues of reimbursement for his

5    stolen property and unlawful restriction of his law library access. (*Id*.) Finally, at the Director's

6    level of review, Plaintiff again focused almost solely on his property reimbursement claim. (*Id*.)

7    Therefore, although he specifically raised the issue of the March 14, 2008 incident at the first level

8    of review, Plaintiff did not exhaust his claims through Appeal Nos. S-08-01533 and S-08-01879

9    because he did not raise the relevant issues at the subsequent stages of administrative review.

10   *Brodheim*, 584 F.3d at 1264-65.

11       In Appeal No. S-08-02206, Plaintiff focused his appeal on requests for a housing transfer and

12   compensation for lost property at the first level of review. (Puget Decl., Ex. E.) In the one-page

13   addendum that he attached to his appeal to the first level of review, Plaintiff referenced the March

14   14, 2008 incident during which inmate Littlemoon was ordered to try to kill him. However, Plaintiff

15   did not specify if it was Defendants or "inmates from Mainline" who ordered inmate Littlemoon to

16   kill him. (*Id*.) Plaintiff also requested to be "compensated for the attempt on his life" and to be sent

17   to THU. (*Id*.) Further, the Court notes that in this addendum, Plaintiff did not specifically raise his

18   claims against Defendants for deliberate indifference to his safety or excessive force stemming from

19   the March 14, 2008 incident. (*Id*.) In addition, Plaintiff made no further reference to this incident at

20   the second level of review or at the Director's level of review. (*Id*.) Although the second level and

21   Director's level reviewers mentioned the March 14, 2008 incident in their decisions, they referenced

22   the incident only as it related to Plaintiff's housing claim and otherwise ignored the addendum. (*Id.*)

23   Therefore, Plaintiff failed to exhaust his claims through Appeal No. S-08-02206. *Brodheim*, 584

24   F.3d at 1264-65; *see also Morton v. Hall*, 599 F.3d 942, 944 (9th Cir. 2010) (finding plaintiff's

25   deliberate indifference to safety claim was not exhausted where he did not allege that prison staff

26   were indifferent to his safety during an altercation with other inmates but instead alleged that he had

27   been prevented by prison staff from receiving visitors under the age of eighteen).

28

United States District Court
For the Northern District of California

19

United States District Court
For the Northern District of California

Finally, in Appeal No. S-10-00384, Plaintiff raised only claims regarding harassment and loss of property at the first and second levels of review.  (Puget Decl., Ex. G.)  However, at the Director's level of review, Plaintiff attached to his appeal a copy of his amended complaint, which specifically described the March 14, 2008 incident.  (*Id.*)  The regulations governing the prison grievance process specifically prevent inmates from raising new issues in supporting documents:

> Attachments shall not raise new issues, but shall only serve to clarify the present appeal issue and action(s) requested as stated in Parts A and B of the Inmate/Parolee Appeal form.  New issues raised in the supporting documents shall not be addressed and any decision rendered will pertain only to the present appeal issue and requested action(s).

Cal. Code Regs. tit. 15, § 3084.2(b)(1).  The original problems Plaintiff complained of in Parts A and B of his appeal form related to harassment and loss of property.  The appeal did not place prison officials on notice of any claims of deliberate indifference to safety and use of excessive force against Defendants.  Plaintiff's attempt to further expand the scope of his appeal by attaching a copy of his amended complaint does not comply with the procedural rules requiring him to describe his problem and the action requested in Sections A and B of the form.  Cal. Code Regs. tit. 15, § 3084.2(b)(1).  At the Director's Level of review, the amended complaint was disregarded, and the fact that it was not addressed further renders Plaintiff's claims in that amended complaint unexhausted.  *See Jones*, 549 U.S. at 218 (to properly exhaust administrative remedies, prisoner must complete the administrative review process in accordance with the applicable procedural rules); *Woodford*, 548 U.S. at 88 (same).  Therefore, only Plaintiff's claims regarding the unrelated harassment and loss of property were exhausted by Appeal No. S-10-00384.  *See id.*

### c.   Summary

In sum, the Supreme Court makes clear that a prisoner must complete the administrative review process in accordance with the applicable procedural rules as a precondition to bringing suit in federal court.  *Woodford*, 548 U.S. at 83.  Appeal Nos. S-08-03145 and S-10-03467 fail to allege with specificity the issues of deliberate indifference to safety and excessive force.  As such, these appeals could not have alerted prison officials as to the nature of Plaintiff's claims and fail to satisfy

the exhaustion requirement.  While Appeal Nos. S-08-01533, S-08-01879, S-08-02206, and S-10-00384 make some reference to his claim of excessive force and/or deliberate indifference to safety, Plaintiff did not raise these claims at each level of the administrative review process of those appeals. Therefore, those appeals also fail to satisfy the exhaustion requirement.  Plaintiff has failed to exhaust his administrative remedies as to his deliberate indifference to safety and excessive force claims.

The claims Plaintiff has raised are serious in nature.  In such circumstances it is particularly appropriate that PBSP and Department of Corrections officials be granted the first opportunity to develop a factual record and respond to the allegations.  Accordingly, because it is clear from the motion to dismiss and Plaintiff's opposition and supplemental opposition thereto that Plaintiff did not exhaust his administrative remedies and no exception to exhaustion applies, the action must be dismissed without prejudice and without leave to amend.  Therefore, the Court GRANTS Defendants' motion to dismiss.  In addition, the Court DENIES as moot Defendants' motion to stay discovery.

**III.    Claim Against Unserved Defendants Ford and McKellep**

As mentioned above, Defendants Ford and McKellep have not been served in this action and have not joined the other Defendants in their motion to dismiss.

It is apparent, however, that even though Defendants Ford and McKellep have not been served, the claims against them are subject to dismissal.  Specifically, the allegations against Defendants Ford and McKellep are the same as those against the other served Defendants to this action, and there is no suggestion in the complaint and exhibits attached thereto, or in the briefs and exhibits filed in connection with the instant motion to dismiss, that the analysis of the claims against Defendants Ford and McKellep differs from the analysis of the claims against the other served Defendants.  *Cf. Columbia Steel Fabricators, Inc. v. Ahlstrom Recovery*, 44 F.3d 800, 803 (9th Cir. 1995) (affirming grant of summary judgment in favor of nonappearing defendant where plaintiff, in response to summary judgment motion filed by defendant who had appeared, had "full and fair opportunity to brief and present evidence" on dispositive issue as to claim against nonappearing

defendant).  As the Court has found Plaintiff did not exhaust administrative remedies with respect to his claims against the other served Defendants herein, Plaintiff cannot prevail on his claims against Defendants Ford and McKellep.  Accordingly, the Court also DISMISSES the claims against Defendants Ford and McKellep as unexhausted.

**IV.   Motion for Recusal**

As mentioned above, Plaintiff has filed a motion for mandatory disqualification or recusal of this Court.  (Docket No. 61.)  The Court notes that, in his motion, Plaintiff mistakenly refers to the undersigned judge, who is an Article III judge, as "Magistrate Judge Yvonne Gonzales Rogers."  Plaintiff claims that the undersigned judge erred in issuing the January 26, 2012 Order instructing him to provide the correct address of unserved Defendant McKellep and that she is prejudiced towards Plaintiff.

Title 28 U.S.C. § 144 provides for recusal where a party files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against the party or in favor of an adverse party.  The affidavit must state the facts and reasons for such belief and, if the party is represented by counsel, must be accompanied by a certificate signed by counsel that it is signed in good faith.  *See* 28 U.S.C. § 144.  A judge finding the motion timely and the affidavits legally sufficient must proceed no further and another judge must be assigned to hear the matter.  *See id.*; *United States v. Sibla,* 624 F.2d 864, 867 (9th Cir. 1980).  If the judge finds the affidavits are not legally sufficient, recusal is simply denied.  *See* 28 U.S.C. § 144; *United States v. $292,888.04 in U.S. Currency*, 54 F.3d 564, 566 (9th Cir. 1995) (affidavit inadequate when based on mere conclusory allegations).  A party may file only one such affidavit in each case.  *See* 28 U.S.C. § 144.  A judge is not required to refer a motion to recuse to another judge if the motion is neither timely nor legally sufficient.  *See United States v. Scholl*, 166 F.3d 964, 977 (9th Cir. 1999).

Recusal is appropriate where a "reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *Yagman v. Republic Ins.*, 987 F.2d 622, 626 (9th Cir. 1993) (citation omitted).  As a federal judge is presumed to be impartial, a substantial burden is imposed on the party claiming bias or prejudice to show that this is not the

1    case.  *See United States v. Zagari*, 419 F. Supp. 494, 506 n.30 (N.D. Cal. 1976).

2         Here, the Court finds Plaintiff's affidavit in support of the motion to recuse the undersigned

3    judge is not legally sufficient.  Plaintiff's argument claiming prejudice stems from the undersigned

4    judge's previous order requiring Plaintiff to provide the Court with the current address of Defendant

5    McKellep and warning Plaintiff that Defendant McKellep would be dismissed if such an address is

6    not provided.  The undersigned judge's adverse rulings are not an adequate basis for recusal.  *Leslie*

7    *v. Grupo ICA*, 198 F.3d 1152, 1160 (9th Cir. 1999).  Therefore, Plaintiff's motion for recusal (Docket

8    No. 61) is DENIED.

9                                   **CONCLUSION**

10        For the reasons outlined above, the Court orders as follows:

11        1.     Plaintiff's request for an extension of time to compel discovery (Docket No. 58) is

12   DENIED.

13        2.     Defendants' Motion to Dismiss for Failure to Exhaust Administrative Remedies

14   (Docket No. 40) is GRANTED as to all claims against the served Defendants, and also as to

15   unserved Defendants Ford and McKellep.  This action is DISMISSED without prejudice to refiling

16   after exhausting California's prison administrative process.  *See McKinney v. Carey*, 311 F.3d 1198,

17   1199-1201 (9th Cir. 2002).

18        3.     Defendants' motion to stay discovery (Docket No. 44) is DENIED as moot.

19        4.     Plaintiff's motion for recusal (Docket No. 61) is DENIED.

20        5.     The Clerk of the Court shall enter judgment, terminate Plaintiff's remaining pending

21   miscellaneous motions as moot (Docket Nos. 33, 36, 48, 50, 54), and close the file.

22        6.     This Order terminates Docket Nos. 33, 36, 40, 44, 48, 50, 54, 58, and 61.

23        IT IS SO ORDERED.

24   DATED:  September 27, 2012

25                                   **YVONNE GONZALEZ ROGERS**
                                     **UNITED STATES DISTRICT COURT JUDGE**

26

27

28

United States District Court
For the Northern District of California